UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

DONNA POISSANT,         )
                        )
          Plaintiff     )
                        )
v.                      )    No. 2:13-cv-162-GZS
                        )
CAROLYN W. COLVIN, Acting )
Commissioner of Social Security, )
                        )
          Defendant     )

# REPORT AND RECOMMENDED DECISION[1]

The plaintiff in this Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal contends that the administrative law judge wrongly rejected the opinions of her treating physician, posed an erroneous hypothetical question to the vocational expert, and relied on otherwise erroneous testimony from the vocational expert. I recommend that the commissioner's decision be vacated and the case remanded for further proceedings.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements for SSD through December 31, 2010, Finding 1, Record at 15; that she suffered from mild bilateral carpal tunnel syndrome, status post successful carpal tunnel release

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383 (c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), as amended January 1, 2013, which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on March 12, 2014, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

surgery, and mild left ulnar neuropathy, producing numbness in the left fifth digit, impairments that were severe but which, considered separately or in combination, did not meet or medically equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 2 and 3, *id*. at 15-29; that she retained the residual functional capacity ("RFC") for a reduced range of work at the light exertional level, as she could only occasionally crawl, must avoid forceful gripping or grasping with her hands, could only occasionally handle and finger, must avoid exposure to extreme cold, must avoid using vibrating hand tools, and must avoid unprotected heights, Finding 5, *id*. at 29-30; that she was unable to perform any past relevant work, Finding 6, *id*. at 32; that, given her age (34 on the alleged date of onset, October 21, 2009), at least high school education, work experience, and RFC, using the Medical-Vocational Rules in Appendix 2 to 20 C.F.R. Part 404, Subpart P (the "Grid"), as a framework for decision-making, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, Record at 32; and that she, therefore, had not been under a disability, as that term is defined in the Social Security Act, from the alleged date of onset through the date of the decision, April 9, 2012, Finding 11, *id*. at 34. The Appeals Council declined to review the decision, *id*. at 1-3, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 523 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as

adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Treating Physician

The plaintiff contends that the administrative law judge committed reversible error by "improperly reject[ing]" the opinions of Dr. Joseph Wolfson, her treating family practitioner. Plaintiff's Itemized Statement of Errors ("Itemized Statement") (ECF No. 15) at 5. Specifically, she asserts that Dr. Wolfson opined that she was limited to reaching in all directions and in handling to less than two and one-half hours per day, Record at 705, and that this is inconsistent with the administrative law judge's conclusion that she could handle objects occasionally, *id*. at 29-30. She contends that the administrative law judge "failed to adequately explain his reasoning" in adopting the opinion of a state-agency reviewing physician, Dr. Richard Chamberlin, rather than that of Dr. Wolfson. *Id*. at 6.

The administrative law judge addressed these opinions as follows:

> In assessing the claimant's residual functional capacity, the undersigned has accorded great evidentiary weight to the November 22, 2010 opinion of Dr. Chamberl[]in (Exhibit 12F), a state agency consulting physician. He was of the opinion that in spite of her bilateral carpal tunnel

> syndrome (and surgery for it), she could occasionally lift and/or carry (including upward pulling) up to twenty pounds; that she could frequently lift and/or carry (including upward pulling) up to ten pounds; that she could stand or/and walk (with normal breaks) for a total of about six hours in an eight-hour workday; that she could sit (with normal breaks) for a total of about six hours in an eight-hour workday; that she could push and/or pull (including operation of hand and/or foot controls), without limitation, except insofar as she was limited in terms of the forces she might exert in lifting and/or carrying; that she could not climb on ladders, ropes or scaffolds; that she could occasionally kneel; that she could not crawl; that her ability to engage in handling (gross manipulation) was limited in that she should avoid constant handling; that she should avoid even moderate exposure to vibration and extreme cold (i.e., "avoid cold and vibratory environments").
>
> * * *
>
> In February, 2012 Dr. Wolfson described the functional limitations he believed resulted from her upper extremity impairments and anxiety (Exhibit 20F). He was of the opinion that she could occasionally lift and carry 20 pounds and that she could frequently lift and carry unspecified weights *less than ten pounds.* He opined that she had limited abilities to push and pull with her upper extremities. He further opined that she could never climb ramps, stairs, ladders, ropes or scaffolds; that she could only occasionally balance; that her ability to reach in all directions (including overhead) was limited to less than two hours per day, that her ability to engage in gross manipulation was limited to less than two hours per day, that she had limited ability to tolerate exposure to vibration; that she had limited ability to tolerate exposure to "[h]azards", including machinery and heights. His opinion has been accorded some evidentiary weight, although it describes some limitations that are not adequately explained (e.g., limitations relating to climbing stairs and ramps, balancing and reaching). To the extent it differs from Dr. Chamberl[]in's opinion (Exhibit 12F), it is accorded relatively less evidentiary weight.

*Id*. at 31-31 (emphasis in original). In footnotes, the administrative law judge noted that Dr. Wolfson frequently did not comply with the requests on the form that recorded his conclusions that he describe the medical and clinical findings that support those conclusions. *Id*. at 31 nn. 14-16, 32 nn. 17-18.

It is immediately apparent from the cited language from the opinion and upon reviewing Dr. Chamberlin's conclusions that the administrative law judge neither adopted all of Dr.

4

Chamberlin's conclusions nor rejected all of Dr. Wolfson's limitations. For example, Dr. Chamberlin said that the plaintiff must "[a]void constant handling," Record at 573, while the RFC assigned to her by the administrative law judge provides that she "can only occasionally handle and finger," *id*. at 30, a more restricted level of activity than "not constant." *See Dandreo v. Astrue*, Civil No. 09-347-P-H, 2010 WL 2076090, at *2 (D. Me. May 20, 2010). Dr. Chamberlin found that the plaintiff could kneel only occasionally, Record at 572, while the RFC allows frequent kneeling. *Id*. at 30. Dr. Wolfson opined that the plaintiff could frequently kneel, crouch, crawl, and stop, *id*. at 704, and the administrative law judge adopted those findings, *id*. at 30. He adopted Dr. Wolfson's limitations on vibration and exposure to hazards. *Compare id*. at 706 *with id*. at 30.

The plaintiff takes issue, Itemized Statement at 6, with the administrative law judge's observation that Dr. Wolfson's opinion "describes some limitations that are not adequately explained (e.g., limitations relating to climbing stairs and ramps, balancing and reaching)," Record at 32, and the administrative law judge's footnotes, listed above, which she characterizes as "criticism that Dr. Wolfson did not adequately explain his opinion." Itemized Statement at 6. She asserts, without citation to authority, that "Dr. Wolfson's opinions are directly supported by his treatment notes[]" *Id.*

A review of the form entitled "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" that was filled out by Dr. Wolfson demonstrates that the administrative law judge's first observation is correct. Under the heading "Postural Limitations," Dr. Wolfson checked boxes indicating that the plaintiff should never climb ramps or stairs and only occasionally reach, but wrote nothing following the direction "When less than two-thirds of the time for frequently or less than one-third for occasionally, fully describe and explain." Record at

5

704. Under the heading "Manipulative Limitations," Dr. Wolfson checked boxes indicating that reaching in all directions was limited to less than two and one-half hours a day, but wrote nothing following the instruction "Describe how the activities checked 'limited' are impaired and the basis of additional manipulative limitations. What medical/clinical findings support your conclusion?" *Id*. at 705. The administrative law judge's observation was correct.

With respect to the footnotes, each observes correctly that Dr. Wolfson did not respond to most of the requests on the form that he provide information supporting his conclusions. Record at 31-32 & nn. 14-18. The plaintiff has not demonstrated reversible error in this regard.[2]

The plaintiff also suggests that the administrative law judge "could have recontacted Dr. Wolfson . . . to seek clarification or otherwise develop and clarify the issue." Itemized Statement at 6. However, there is no suggestion in the administrative law judge's opinion that he was "unclear" about any aspect of Dr. Wolfson's conclusions as they were listed on the form. The relevant regulation merely provides that an administrative law judge will contact a treating source directly only when the evidence that has been received is inadequate to support a determination of disability. The plaintiff points to no "conflict or ambiguity" in Dr. Wolfson's records and reports "that must be resolved." 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1). In this district,

> [a]n administrative law judge is not required to further develop the record when a claimant is represented, as the plaintiff was here, . . . unless she does not understand any of the treating physicians' records or finds gaps in those records or the records are otherwise inadequate to allow her to decide the case. 20 C.F.R. § 404.1512(e)(1); *see also White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). In order to obtain remand on this basis, the plaintiff must point to specific facts that were

---

[2] At oral argument, the plaintiff's attorney contended that Dr. Wolfson's failure to provide the requested supporting information created a "gap" in the record that required the administrative law judge to contact Dr. Wolfson directly. If this argument was properly raised in the itemized statement, it fails. The burden is on the plaintiff, who obtained the form from her treating physician, to make sure that it was completed before she submitted it in support of her application for benefits.

6

> not brought out during the hearing and provide proof that additional
> medical evidence existed. *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir.
> 1997).

*Archer v. Colvin*, Civil No. 1:13-cv-00018-NT, 2014 WL 457641, at *6 (D. Me. Feb. 4, 2014) (quoting *Plato v. Colvin*, Civil No. 1:12-cv-319-DBH, 2013 WL 5348603, at *12 (D. Me. Sept. 24, 2013)). The Itemized Statement does not meet this standard.

That being said, the administrative law judge's statement of reasons for adopting Dr. Wolfson's conclusions only where they did not conflict with those of Dr. Chamberlin is overly brief.[3] The plaintiff relies, Itemized Statement at 5, 7, on the requirement set out in Social Security Ruling 96-2p that when a determination is not fully favorable, the notice of the determination "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Social Security Ruling 96-2p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2013) at 115. However, even when a decision fails to meet this standard, the error is harmless if there is substantial evidence in the record to support the administrative law judge's conclusion. *See, e.g., Mason v. Astrue*, Civil No. 08-17-B-W, 2008 WL 4822238, at *6 (D. Me. Nov. 4, 2008).

In the instant case, Dr. Wolfson's restrictions on the plaintiff's use of her hands for reaching and handling, which are the only restrictions mentioned in the Itemized Statement, are inconsistent with other medical evidence in the record. Of particular interest in this regard are the reports of the neurologist and surgeon to whom Dr. Wolfson referred the plaintiff for treatment of her carpal tunnel syndrome and the physician who examined her for the Maine

---

[3] The plaintiff's repeated characterization of the administrative law judge's treatment of Dr. Wolfson's conclusions as a "rejection," Itemized Statement at 5, 7, 8, 9, paints with too broad a brush. The administrative law judge adopted some of Dr. Wolfson's opinions concerning the plaintiff's physical limitations.

7

Disability Determination Services. Dr. Fecko, the neurologist, diagnosed on September 21, 2011, a very mild ulnar neuropathy in the left hand with no treatment other than continued monitoring, Record at 691, well after her carpal tunnel release surgeries in June and September 2010, *id*. at 699, after which, in December 2010, she reported significant improvement, *id.* There is no indication in his records of any post-surgical physical problems with the plaintiff's right hand.

The plaintiff reported to the consultative physician, Dr. Albert Shems, in October 2010 that she had "improved greatly" since the surgery but still had pain in both wrists and mild tendonitis in her left forearm. *Id*. at 559. On examination she demonstrated normal range of motion in all directions in the wrists and fingers with a grasp rated 5 on a scale of 1 to 5. *Id*. at 560. Dr. Shems observed that she "seemed to have healed very well from the carpal tunnel syndrome" and that the tenderness in her left forearm "may disappear as time goes on." *Id*. at 561. She reported significant relief with "minimal discomfort" after the release surgery to Peter A. Dollard, M.D., who performed the surgery. *Id*. at 536 (right), 688 (left).

This medical evidence is inconsistent with an inability to reach or handle for more than two and a half hours in a workday and, in the case of Drs. Fecko and Dollard, comes from medical professionals with specialties more specific to the plaintiff's claimed limitations than is the family practice specialty of Dr. Wolfson. It is substantial evidence that supports the lesser restrictions adopted by the administrative law judge.

### B. Vocational Testimony

The plaintiff contends that the vocational expert's testimony at the hearing, upon which the administrative law judge relied at Step 5 of the sequential evaluation of her application for benefits, was "fundamentally flawed for all of the reasons discussed in detail, above." Itemized

Statement at 9. I have rejected those arguments and this basis for remand accordingly is not available to the plaintiff.

The plaintiff goes on to assert that the vocational expert also "made multiple mistakes that invalidate her testimony." *Id*. at 10. Specifically, she contends that the vocational expert identified as available to the plaintiff jobs that were semi-skilled, despite that fact that she was limited to unskilled work. *Id*. at 10-11. In addition, she argues that the administrative law judge erroneously found that this testimony was consistent with the Dictionary of Occupational Titles. *Id*. at 12. Because he did not "address and resolve" this discrepancy, she asserts, the administrative law judge committed reversible error. *Id*.[4]

The defendant responds that the vocational expert testified that the plaintiff's past relevant work as a cashier/checker at Rite-Aid has a Specific Vocational Preparation Level ("SVP") of 3, the same level assigned to one of the two jobs that she testified, Record at 73-74, would be available to the plaintiff, gate guard and credit clerk. Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 18) at 13. *See* Record at 59, 72; § 211.462-014 (cashier-checker), Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT"); *id.* § 372.667-030 (gate guard); *id*. § 237.367-014 (call-out operator).[5] An SVP of 3 corresponds to semi-skilled work. Social Security Ruling 00-4p ("SSR 00-4p"), reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2013) at 245.

---

[4] The defendant asserts that this issue has been waived by the failure of the plaintiff's representative to raise this issue at the hearing or in post-hearing correspondence with the administrative law judge. Opposition at 13-14. However, the issue is clearly raised in the request submitted to the Appeals Council. Record at 7. While the failure to mention the issue to the administrative law judge skates close to the edge of waiver, I conclude that in this case the issue was fully raised before the agency before any court action was filed, and that is sufficient for this case.

[5] The plaintiff correctly points out, Itemized Statement at 11 n.3, that the vocational expert erroneously called the job that corresponded to this number in the DOT "credit clerk." She assumes that the vocational expert meant to identify a job with that title and the DOT number 205.367-022, which has an SVP level of 4, or 245.367-022, which has an SVP level of 3. *Id*. at 11. I find the defendant's interpretation, that the vocational expert gave the correct DOT number but wrong name, more persuasive, particularly as the vocational expert testified that the job's SVP level was 2, Record at 74, and the job description begins: "Compiles credit information, such as status of credit accounts[,]" and refers to updating credit files.

However, the administrative law judge made no finding in this case concerning transferability of the plaintiff's job skills, stating instead that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." Record at 32. Because he also found that the plaintiff's severe impairment impeded her ability to perform substantially all jobs at the light exertional level, he relied on the vocational expert's testimony about available jobs given the limitations included in her RFC. *Id.* at 33.

The defendant "acknowledges that the ALJ should have made findings of fact as to whether Plaintiff had transferable skills from her past relevant work, and whether those acquired work skills transferred to the jobs the VE identified at Step 5." Opposition at 14. She concedes that the lack of attention to this topic "might well preclude the ALJ's reliance on the job of gate guard," because that job has an SVP level of 3, but argues that the second job, with an SVP level of 2, corresponds to unskilled work, SSR 00-4p, at 245, which does not require any transferable skills. *Kramer v. Astrue*, No. 1:10-cv-207-JAW, 2011 WL 1158234, at * 3 (D. Me. Mar. 25, 2011).

The plaintiff argues that the court should reject the SVP level given by the DOT for this job because a "newer Department of Labor job information source, the O'Net, demonstrates that all of these credit check jobs have now been upgraded to at least semi-skilled with an SVP of 4 or higher[.]" Itemized Statement at 11 n.5. The Itemized Statement gives no indication of where or how the O'Net might be located. The defendant states that it is a database, Opposition at 16, but, in any event, the applicable regulation and SSR 00-4p require that the testimony of a vocational expert be consistent with the DOT and not with any other data source. The plaintiff's

argument on this point was rejected in *Earls v. Commissioner of Soc, Sec.*, No. 1:09 CV 01465, 2011 WL 3652435, at *7 (N.D. Ohio Aug. 19, 2011), and I find that court's analysis persuasive.[6]

I do not see any discrepancy between the vocational expert's testimony and the DOT; certainly there is no difference so pronounced as to require remand.

Nonetheless, I continue to be troubled by the administrative law judge's finding that transferability of skills is irrelevant in this case, and his failure to include any mention of transferability of skills in his hypothetical question to the vocational expert, or any mention of a limitation to the unskilled light occupational base. Record at 72. As a result of the administrative law judge's incorrect finding about the transferability of skills, the plaintiff's transferable skills, if there were any, were not identified. While the call out operator job may be unskilled and thus fortuitously fit within the administrative law judge's use of the Grid as a "framework," what the administrative law judge actually did is less than clear. Under these circumstances, while the question is a close one, I believe that remand is in order, to deal with this issue only. *See Thommen v. Colvin*, No. 3:12-cv-01635-SI, 2013 WL 5819099, at *11-*13 (D. Or. Oct. 29, 2013).

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case remanded for further proceedings consistent with this opinion.

---

[6] At oral argument, the plaintiff's attorney asserted that Judge Hornby of this court "says that he is not prepared to rely on the Dictionary of Occupational Titles because it is outdated." What Judge Hornby actually wrote is the following: "Unlike the Magistrate Judge, I do not rely on the description of job duties in the **Dictionary of Occupational Titles** (4th ed. 1977) to reach that conclusion about geographic spread. It was last updated in 1991, and its job descriptions may now be badly out of date. I understand that the Commissioner still uses it (and also is actively considering whether to go to a new system because of its obsolescence), but I am reluctant to use it independently." *Vining v. Astrue,* 720 F.Supp.2d 126, 128 n.3 (D. Me. 2010). This is far from a ruling requiring the commissioner to ignore her own regulations and rulings that involve the DOT.

## NOTICE

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 30th day of March, 2014.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge